# Richmond

MAYBELLE F. SYKES, ADM'X, ETC. v. STONE & WEBSTER
ENGINEERING CORP.

March 3, 1947.

Record No. 3151.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*John G. May, Jr., Robert Lewis Young, Charles W. Crowder* and *Joseph J. Williams, Jr.,* for the plaintiffs in error.

*Bowles, Anderson & Boyd,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, administratrix of Raymond Harris Sykes, brought suit against defendant, Stone & Webster Engineering

Corporation, by notice of motion for judgment, claiming damages for the wrongful death of her intestate due to the negligence of the defendant. The negligence alleged was that her intestate was at work on one of the lower landings of a power station then being constructed in Chesterfield county; that the defendant was also engaged in work on said building in connection with its construction and equipment, above where the intestate was working, and negligently allowed a piece of timber to fall or be thrown on intestate, causing his death.

To this action the defendant filed a plea in abatement and motion to quash, and separate pleas of *res adjudicata* and estoppel by former judgment, payment and accord and satisfaction, and the general issue. In these special pleas the defendant alleged that it was principal contractor on said power station; that Richmond Structural Steel Company, Inc., was its subcontractor, and that plaintiff's intestate was an employee of said subcontractor; that it and its subcontractor carried insurance pursuant to the Workmen's Compensation Act; that the plaintiff, for herself and other beneficiaries, had made a written agreement with said subcontractor and Liberty Mutual Insurance Company, its insurance carrier, for the payment of compensation pursuant to the Compensation Act; that pursuant to said agreement the Industrial Commission, in a proceeding to which plaintiff and defendant were parties, made an award directing payment of compensation by Liberty Mutual Insurance Company as insurance carrier of said subcontractor. A certified copy of the opinion and award of the Industrial Commission was exhibited with each plea. The pleas averred that the award of the Industrial Commission was not appealed from, had become final and binding, and, in substance, that the remedy so followed by plaintiff was exclusive and the present action at common law could not now be maintained by her.

The plaintiff moved to strike out the special pleas as offering no defense. The trial court overruled that motion and its action is the subject of the first assignment of error. This raises the question whether the employe of a subcon-

tractor can maintain a common law action against the general contractor for an injury arising out of and in the course of his employment; or, stated another way, is the general contractor such "other party" as that a common law action against it has not been taken away by the compensation law? The answer is to be found in the construction of section 12 and section 20(a) of the Workmen's Compensation Act (Code, 1942 (Michie), secs. 1887 (1) etc.).

The first paragraph of section 12 provides that the rights and remedies granted to an employe by the Act, where he and his employer have accepted the provisions of the Act, shall exclude all other rights and remedies at common law or otherwise on account of the injury or death. That paragraph was all there was of that section in the original Compensation Act (Acts 1918, p. 640), and it was considered as meaning just that and as barring any action at common law against all persons for the injury or death. The amendment of 1920 (Acts 1920, p. 256), which added the four additional paragraphs of the present section, had the effect of destroying that restriction and allowing such action against a person other than the employer. *Southern R. Co.* v. *United States Cas. Co.*, 136 Va. 475, 118 S. E. 266.

Since by section 12 the rights and remedies of the employe are made exclusive against the employer, and permitted against "any other party," or "any person other than the employer," it becomes necessary to inquire who is such other party. That question was answered in *Feitig* v. *Chalkley*, 185 Va. 96, 38 S. E. (2d) 73. There Mr. Justice Hudgins for the court reviewed the history of section 12, and held that an injury caused by the negligence of a fellow servant was within the field of industrial accidents in which it was the purpose of the Compensation Act to cast the loss upon the business, and that therefore the injured employe had no common law right of action against his fellow servant. He said:

"When the theory, the history and the broad purpose of the act are considered, it would seem that 'other party,' as used in section 12, refers exclusively to those persons who

are strangers to the employment and the work, and does not include those who have accepted the act and are within the express terms of section 11—'he (employer) or those conducting his business.' "

If the "other party" who can be sued refers only to those who are strangers to the employment and the work, the result would be that this defendant, the general contractor, who is no stranger to the employment and the work, cannot be sued. Plaintiff contends that the fifth paragraph of section 12 prevents that result. That paragraph (which was added to section 12 in 1920, removed from it in 1924 and restored to it in 1936) is as follows:

"Nothing in this act contained shall be construed to make, for the purposes of this act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."

That paragraph must in turn be read and reconciled with section 20(a). That section, as originally enacted in 1918, contained only one paragraph, in which the words "principal contractor" were used where the word "owner" occurs in the present first paragraph of this section 20(a). The section was amended in 1924 (Acts 1924, p. 478), due probably to the decision in *Bamber* v. *Norfolk*, 138 Va. 26, 121 S. E. 564, referred to later herein, holding that the city as owner of the work after it was finished was not included in the term "principal contractor" as then used in the Act.

It is to be noted that the present section 20(a) contains four paragraphs. The first covers a case where the "owner" undertakes to perform work which is part of his trade, business or occupation and contracts with a "subcontractor" to do all or part of it. In that case the owner is liable to pay compensation to any workman employed in the work (by any subcontractor) just as if the workman had been immediately employed by the owner.

The second paragraph covers the case where a "contractor" contracts to perform work for another person (e.g. the owner), which work is *not* part of the trade, business or oc-

cupation of such other person (owner), and contracts with a "subcontractor" to do all or part of it, then the contractor (but not the owner) shall be liable to pay compensation to any workman employed in the work (by any subcontractor) just as if the workman had been immediately employed by the contractor.

And so on as to owner, or principal contractor, and subcontractors, in descending order, in the manner provided by the last two paragraphs.

■ The section makes the owner liable if the workman, no matter how far down the line, is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation. But if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor is liable to the workman, but not the owner. As between the owner and such contractor, the latter is an independent contractor, and the last paragraph of section 12, above quoted, declares that such workman shall not be taken to be the employe of such owner. And such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade, business or occupation of the contractor; but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not a part of the trade, business or occupation of the original contractor.

It clearly appears to be the purpose of section 20(a) to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employee. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compen-

sation under section 20(a). At that point paragraph 5 of section 12 intervenes and the employe's right of action at common law is preserved.

The fifth paragraph of section 12 was part of that section when *Bamber* v. *Norfolk, supra,* was decided. There the city contracted with Birchett to erect a standpipe outside the city. Bamber was an employee of Birchett and was killed while engaged in the work. The question involved was whether Birchett was a subcontractor of the city so as to make the city liable as "principal contractor" for compensation to the dependents of Bamber under section 20(a) in its then form. The court held that the section as it then was did not make the city liable; that the section was not intended to apply to any owner, "but only to some independent contractor who undertakes to do such work as is mentioned in the section for an owner or someone else, which independent contractor sublets the work or some part of it to at least one other independent contractor who employs the workman mentioned in the section upon the work which is sublet."

In other words, said the court, the section was applicable only to cases in which there were at least four persons in interest, namely: (1) An owner or other person having the work executed for himself; (2) an independent contractor who has undertaken to execute the work for the person first mentioned; (3) a subcontractor with whom the independent contractor has contracted to do the whole or some part of the work; and (4) a workman "employed in the work." The opinion then continues:

"Where there are as many as such four persons in interest, section 20(a) does depart from the classification aforesaid made by the general provisions of the act, based on the existence of the relationship of master and servant between the persons liable and the workman embraced in the provisions of the act, and does make, for the purposes of the act, the employees of a subcontractor (who is an independent contractor), the employees of the principal contractor (who is also an independent contractor), notwithstanding the fact

that in such case the relationship of master and servant does not exist as·between the principal contractor and the employees of the subcontractor; but this, we think, is the extent of the departure made by section 20(a) from the aforesaid classification made by the other provisions of the act.

"We are further of opinion that if there could have been any reasonable doubt as to the meaning as above held being the meaning of the section 20(a) prior to the amendment of the act which was enacted by the legislature of 1920 (Acts 1920, at page 257) (which amendment was in force when the instant case arose), it is set at rest by such amendment."

The fifth paragraph of section 12 was reinstated by the amendment of 1936 (Acts 1936, p. 591), after being absent since 1924. In *Noblin* v. *Randolph Corp.*, 180 Va. 345, 23 S. E. (2d) 209, Mr. Justice Hudgins further reviewed the history of section 12, giving its status "as construed by this court, when the General Assembly, in 1936, decided to repeal all amendments to section 12 adopted after 1920 and to re-enact the 1920 amendment with an addition hereinafter quoted." He then stated the principle that "Where a repealed statute, previously construed by the courts, is re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature and becomes obligatory upon the courts. *Kelly* v. *Trehy*, 133 Va. 160, 112 S. E. 757."

The construction of the fifth paragraph of section 12, in its relation to section 20(a) as made by the *Bamber Case* therefore became a component part of that paragraph when it was re-enacted as part of section 12; that is, that said paragraph does not have the effect to change the provisions of section 20(a) making the employes of a subcontractor also the employes of the principal contractor, under the conditions stated in that section, notwithstanding the relationship of master and servant does not exist between them.

We hold, therefore, that under the Compensation Act a principal or general contractor is liable for compensation to the employe of a subcontractor where the work being performed by the employe is part of the general contractor's

trade, business or occupation, and that for the purposes of the Act, such employe of the subcontractor is the employe of the general contractor. Between them the Act supplies the relationship of master and servant. The rights of the servant against the master given by the Act are exclusive and the common law right of action is taken away. This is in accord with the objectives of the Compensation Act as stated in *Feitig* v. *Chalkley, supra*:

"The fundamental purpose of the act is to give compensation for accidental injuries within the hazards of the employment. The act does not apply to accidents outside the field of industrial hazards. Within that field the only remedies of the employee are those prescribed by the act."

The lack of harmony among the courts on the result here reached derives mainly from the differences in the provisions of the statutes involved. See Annotation, 151 A. L. R., p. 1359; 71 C. J. 1528, sec. 1562(b); Schneider, Workmen's Compensation, Perm. Ed., Vol. 2, sec. 326, p. 178, Vol. 3, sec. 842, p. 215. A different conclusion as to the meaning of our statute was reached in *McGann* v. *Moss,* 50 F. Supp. 573. It does not appear that effect was there given to what we think determines whether section 20(a) or the fifth paragraph of section 12 shall apply; that is, whether the work being performed by the injured workman and that being done by the person causing the injury are both part of the trade, business and occupation of the original contractor.

The trial court held that as matter of law, and also as matter of fact, the relationship between defendant and Richmond Structural Steel Company, Inc., was that of principal contractor and subcontractor. That holding is the subject of the second and third assignments of error. The first conclusion was on the ground that the award of the Industrial Commission conclusively established that relationship. The finding of fact of the hearing commissioner explains that proceeding and shows the ruling. It is as follows:

"The instant case was placed upon the docket at the request of the Royal Indemnity Company, the insurer of Stone and Webster Engineering Corporation, the principal con-

tractor. The application for a hearing was in the form of a letter dated September 23, 1943, and was made pursuant to the provisions of Section 58 of the Workmen's Compensation Act. The manifest purpose of the said application was to determine the rights of Stone and Webster Engineering Corporation and the Royal Indemnity Company, its insurer, under Section 20 of the Act.

"The deceased was an employe of the Richmond Structural Steel Company, Incorporated, whose insurer was the Liberty Mutual Insurance Company. At the request of the Royal Indemnity Company these were made parties to the proceeding.

"The case was set for hearing as to all parties in interest at the foregoing time and place. All parties were duly represented at the hearing by counsel as shown in the caption.

"Upon the calling of this case, counsel for the claimant made a motion that the case be dismissed. This motion was united in by counsel for the Liberty Mutual Insurance Company. The said motion was overruled by the hearing Commissioner, who was of the opinion that all parties at issue were subject to the provisions of the Virginia Workmen's Compensation Act. An exception to the ruling of the hearing Commissioner was taken by counsel for the claimants. Thereupon the Liberty Mutual Insurance Company asked leave to file a Memorandum of Agreement providing for compensation benefits of $18.00 per week to the claimants of the deceased pursuant to Section 40 of the Act. The immediate employer of the deceased having accepted the case on Memorandum of Agreement, the hearing Commissioner advised the parties that an award would be entered thereupon, it being the intention of the hearing Commissioner to determine the rights of the claimants to recover compensation benefits under the Act without prejudice to any other rights that they may be deemed to have at common law."

Pursuant thereto an award was entered by the Commission on December 8, 1943, and no appeal was taken.

We agree with the trial court that these proceedings have determined the relationship of the parties and that re-

lationship is now *res adjudicata* (or perhaps more accurately, a matter of estoppel by judgment). That was a court of competent jurisdiction which had to determine the same issue as now made, and between the same parties, before it could decide the merits. As the hearing commissioner said, "The manifest purpose of the said application was to determine the rights of Stone and Webster Engineering Corporation and the Royal Indemnity Company, its insurer, under Section 20 of the Act." Unless the commissioner has determined that this defendant was a principal contractor under section 20(a) of the Compensation Act, this defendant could not have maintained the application. The motion to dismiss tested that right and it was overruled on the ground "that all parties at issue were subject to the provisions of the Virginia Workmen's Compensation Act." The finding of the commissioner necessarily affirmed, in fact expressly found, the existence of the relationship which is now sought to be put in controversy again between the same parties. They have had their day in court on that issue. *Chesapeake, etc., R. Co.* v. *Rison*, 99 Va. 18, 37 S. E. 320; *Capps* v. *Whitson*, 157 Va. 46, 160 S. E. 71.

The statement in the finding that it was the intention "to determine the rights of the claimants to recover compensation benefits under the Act without prejudice to any other rights that they may be deemed to have at common law," does not prevent the result here found. The Commission determined the relationship and did not, and of course could not, undertake to interfere with whatever rights the parties in that relationship had at common law.

This conclusion makes it unnecessary to review the finding of the trial court, sitting without a jury, that the evidence required it to be found as a fact that the defendant was a general contractor and Richmond Structural Steel Company, Inc., a subcontractor on the work that was being performed. We have read that evidence, however, and in our opinion it supports the conclusion of the trial court.

After the rulings of the trial court above noted, Liberty Mutual Insurance Company asked to amend the notice of

motion for judgment to allege that as insurer of Richmond Structural Steel Company, Inc., immediate employer of the plaintiff's decedent, it had been compelled or was obligated to pay certain sums to the dependents of the decedent which it was entitled to recover from the defendant, pursuant to the provisions of section 12 of the compensation law, and by way of exoneration and indemnity. The court refused the amendment and this action is the subject of the fourth assignment of error.

Under section 20(b), (c) and (d), the principal contractor is liable to the workman but the workman may recover from the subcontractor, and if the principal contractor is compelled to pay, he is entitled to indemnity from the subcontractor. While the liability of the principal contractor is directly to the workman, as between the principal contractor and subcontractor, the liability of the principal contractor is secondary, and the principle of exoneration does not operate in favor of one primarily liable against one secondarily liable. The right of Liberty Mutual Insurance Company in the original action was on the theory of subrogation under the Compensation Act. The proposed amendment seeks to set up a new right, based on implied contract, independent and outside of the Compensation Act, and with which the named plaintiff in the original action had no concern. The reasons against the amendment are so well stated in the opinion of the able judge of the trial court, made a part of the record, that we adopt that part of his opinion on this subject as follows:

"Section 12, paragraph 3, of the Workmen's Compensation Act further provides that it shall not 'be construed as conferring upon the insurance carrier any other or further rights than those existing in the employer at the time of the injury to his employee'. It, therefore, necessarily follows that *under* the act no greater or other rights are conferred upon Liberty Mutual Insurance Company than were enjoyed by Richmond Structural Steel Corporation.

"The right to indemnity or exoneration for a base must rest upon the fact that the party seeking indemnity has

discharged, under contractual obligation express or implied, the obligation of the one primarily liable. 42 Corpus Juris *Secundum* 564; 27 Am. Jur., 456-457 (465-6). Such is not the status of the parties in this case. The provisions of the Workmen's Compensation Act have reversed what otherwise would have been the situation. It has made the subcontractor and its insurer, the Liberty Mutual Insurance Company, primarily liable and Stone & Webster Engineering Corporation and its insurer, secondarily liable to the injured party or his dependents. This is because the act is all inclusive legislation on the subject treated. It places and fixes the burden for an accident, irrespective of whether caused by negligence or not, and whether caused by one party or another, where it deems proper for the common benefit of those operating thereunder. Certain cases may arise where it appears that the burden is inequitably imposed but the over-all purpose of the Act must prevail and those enjoying its benefits must bear its burdens as set forth therein.

"The action now sought to be maintained is asserted by one who voluntarily came under the Act and enjoyed its benefits against one under the Act, and who is entitled to its protection. In other words, the cause of action asserted is claimed to arise though all of the parties were in their relations to each other operating under the Act. While the liability sought to be enforced, as between the parties so situated, is outside of and foreign to the Act. The liability asserted against the defendant, Stone & Webster Engineering Corporation, is said to be exclusive of and not based upon the Act. Again the answer and defense to this contention is that the parties were operating under the Act and the plaintiff, Liberty Mutual Insurance Company as the insurer of the sub-contractor in the *'per stirpes'* line, is *primarily* liable. And he who benefits by the act must bear its burdens and, therefore, cannot claim both under and against the Act. The one primarily liable cannot, under the principle of indemnity, recoup his loss against one secondarily liable.

" * * * The decisions in *Scott* v. *Tankersley*, 10 Leigh (37 Va.) 581; *Aetna Cas., etc., Co.* v. *Whaley*, 173 Va. 11,

3 S. E. (2d) 395; *New Amsterdam Cas. Co.* v. *Boaz-Kiel Const. Co.*, 115 F. (2d) 950; *Fox* v. *Dunning*, 124 Okla. 228, 255 P. 582; *Fidelity, etc., Ins. Co.* v. *Sears, Roebuck & Co.*, 124 Conn. 227, 199 A. 93, 117 A. L. R. 565, correctly apply the principle of indemnity and are authority for the case at hand. · * * * The court's conclusions are, therefore, that this action, irrespective of the statute of limitations, cannot be maintained by Liberty Mutual Insurance Company upon the facts as heretofore *established* by the record."

We find no error in the case and the judgment is therefore affirmed.

*Affirmed.*