Henry Lee **GARRETT**

v.

**TUBULAR PRODUCTS, INCORPORAT- ED and Frank Jett.**

**Civ. A. No. 2632.**

United States District Court
E. D. Virginia,
Richmond Division.
July 30, 1959.

---

Tuck & Somma, Richmond, Va., for plaintiff.

Denny, Valentine & Davenport, Richmond, Va., for defendants.

STERLING HUTCHESON, Chief Judge.

The essential facts with which we are concerned are as follows.

In 1955, Doyle and Russell, of Richmond, Virginia, a general contractor engaged in the construction business, entered into a contract with the Mutual Assurance Society of Virginia to erect a parking garage on land owned by the Society at the northeast corner of 9th and Cary Streets in the City of Richmond. Under its contract with the Society, Doyle and Russell agreed to furnish all materials and labor required for the job. As is customary in such operations, Doyle and Russell also entered into agreements with various subcontractors to perform specified portions of the work. Among the subcontractors was Liphart Steel Company of Richmond, which company contracted to erect the steel in the parking facility. That contract recited that Doyle and Russell had an agreement with Tubular Products of Souderton, Pennsylvania, to furnish and deliver f. o. b. trucks to the building site certain columns constructed of tubular steel, to be used in connection with the Liphart operations. Liphart, in turn, contracted with Moore Crane Service of Richmond for Moore to provide a crane and crew to unload the steel pipe columns which were to be delivered by Tubular f. o. b. truck at the site. The plaintiff to this action, Garrett, was employed as a helper on the crane furnished by Moore to Liphart for the purpose of unloading the steel.

Doyle and Russell, the general contractor, also entered into an agreement with Tubular, bearing date of July 26, 1955, under which agreement or contract Tubular agreed to "furnish all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the architects", and deliver f. o. b. trucks to the building

site. In that contract Tubular is referred to as the subcontractor and it agreed to prepare shop drawings for the material and to make deliveries at specified times. It was further provided that a sufficient number of trucks would be used in delivering the columns so as to permit uninterrupted unloading by the cranes. It was further recited that Doyle and Russell, as contractor, had sublet to another subcontractor the erection of the columns. In the contract between Doyle and Russell and Tubular it was specifically provided that erection of the columns was not included.

It will thus be seen from this and other provisions in the contract that the material was fabricated by Tubular in accordance with the specifications of the architects and there were a number of formal provisions concerning compliance in that regard.

On October 6, 1955, in accordance with the contract, Tubular delivered to the job site a truck load of material on a tractor-trailer operated by the defendant, Frank Jett. After the arrival of the material the crane supplied by Moore and operated by the crew, including the plaintiff Garrett, prepared to unload the material from the trailer. Jett, the employee of Tubular, was directed by the operator of the crane, to place the trailer in position for unloading. In this movement the plaintiff Garrett was injured.

This is an action brought by Garrett against Tubular and Jett to recover damages for the injuries so sustained. A motion for summary judgment has been filed by the defendants, in which it is contended that the plaintiff's remedy is solely under the Workmen's Compensation Act of Virginia and no common law action can be maintained by him against the defendants. The defendants contend that they are not the "other party" within the meaning of Section 65-38 of the Virginia Workmen's Compensation Act, Code 1950, and that at the time of the injuries both Jett, the employee of Tubular, and the plaintiff were under the direction and control of Liphart and were "fellow employees".

From an examination of decided cases it is clear that the issue turns upon the status of Tubular; that is, whether Tubular is a subcontractor of Doyle and Russell, or the supplier of material. If Tubular is a subcontractor, the plaintiff is limited in his recovery to the Workmen's Compensation Act. If Tubular is a mere supplier of materials, the defendants are "other party" within the purview of the statutes.

The defendants point to the language of the contract between Doyle and Russell and Tubular, in which the latter is designated as a subcontractor; to the manner of delivery; fixing of delivery dates and the requirement that a sufficient number of trucks would be used to permit uninterrupted loading; the submission of work drawings and samples of materials to the contractor for approval; rights of the contractor should the subcontractor fail to comply; provisions concerning overtime work; the extension of the completion date; the agreement to indemnify the contractor for damages caused by the subcontractor; the prohibition against sub-letting without the consent of the contractor; the right of the contractor to visit the place of business of the subcontractor so as to inform the general contractor of conditions and progress of the work; the arbitration of disputes and the agreement of the subcontractor to take out Workmen's Compensation and Public Liability Insurance and the payment by the subcontractor of Social Security, unemployment and other taxes. When examined and analyzed in the light of the facts of this case, it is apparent that these various provisions of the contract have little bearing upon the issue before the Court. The contract is on a printed form and it is obvious that it contains formal provisions designed to cover the obligations of the parties when applicable. The greater number of these formal provisions bear no relation to the obligation assumed by Tubular and are surplusage.

■ It is clear that Tubular merely agreed to furnish f. o. b. to the job site certain fabricated steel. The contract

specifically provided that the erection of that steel on the job site was not included in the contract. As is commonly known, delivery f. o. b. trucks means that the purchaser is charged with the responsibility of unloading materials so delivered. That this was the intention of the parties is demonstrated by the agreement between Doyle and Russell and Tubular in which it is recited that the columns were to be delivered f. o. b. truck at the site and erection of the columns so delivered was not included. It is also shown by the agreement between Doyle and Russell and Liphart, in which it is recited that the contractor had an agreement with Tubular to furnish and deliver f. o. b. trucks to the building site the columns to be used in the construction. This was recognized by Liphart when it entered into a contract with Moore to provide a crane and crew to unload the columns from the trucks. Tubular occupied precisely the same position as would a supplier of brick or cement, who made a sale to a contractor, whether a general contractor or a subcontractor. The fact that the steel was fabricated by Tubular is of no importance. There might well be a situation in which a brick manufacturer contracted to furnish certain special type of brick, such as is often used in the restoration of ancient buildings. Of course, the purchaser would be entitled to examine samples and if desirable to visit the premises where the manufacture was taking place. The dates of delivery and the method of delivery are commonly a part of the order. A written contract between the parties referring to the supplier of the material as a subcontractor does not make him a subcontractor.

▆ It is my conclusion that under the facts of this case it is clear that Tubular was the seller of material and not a subcontractor; and it and its employe and co-defendant, Jett, are "other parties" within contemplation of Section 65–38, Code of Virginia. It is equally clear that under the Virginia cases the defendants, Tubular and Jett, as such "other parties", are liable for the negligence of Jett. Perkinson v. Thomas, 158 Va. 699, 164 S.E. 561; Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73; Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469; Rea v. Ford, 198 Va. 712, 96 S.E.2d 92; Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37; Sears, Roebuck & Co. v. Wallace, 4 Cir., 172 F.2d 802. See also the well considered opinion of Judge Rives in Anderson v. Thorington Construction Company, Incorporated (Law and Equity Court of the City of Richmond, 1959), in which the authorities are carefully analyzed.

An order overruling the motion for summary judgment will be entered upon presentation.