Frank Howard SNEAD, Plaintiff,

v.

NELLO L. TEER COMPANY,
Defendant.

Civ. A. No. 72-C-100-R.

United States District Court,
W. D. Virginia, Roanoke Division.

Jan. 26, 1973.

Gordon H. Shapiro, Roanoke, Va., for plaintiff.

S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

DALTON, Chief Judge.

The plaintiff, a Virginia citizen, is suing the defendant, a Delaware corporation, whose principal place of business is not in Virginia, for injuries sustained while he was working on the construction of the Roanoke Civic Center. The defendant was the general contractor on the project and the plaintiff was employed by Shaw Paint and Wallpaper Company, a subcontractor, when the injuries were sustained. The amount in controversy exceeds $10,000.

The defendant has moved to dismiss this suit, claiming that the plaintiff's exclusive remedy is under the Virginia Workmen's Compensation Act, and that this court therefore lacks jurisdiction over the suit because of § 65.1–40 of the Virginia Code, which makes this Act the employee's exclusive remedy. The plaintiff is currently receiving compensation under the Act from his immediate employer, Shaw Paint and Wallpaper Company.

In a memorandum filed by the defendant in support of its motion to dismiss, the defendant relies on § 65.1–29. This section reads as follows:

"When any person (in this section . . . referred to as 'owner') undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (in this section . . . referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him." The court believes, however, that reliance upon this section is misplaced, for § 65.1–29 concerns only suits by employees of subcontractors against the owners of the project.

As interpreted by the Virginia Supreme Court, owners of projects are liable under the Workmen's Compensation Act to employees of subcontractors, if these subcontractors are performing work which is part of the trade, business, or occupation of the owner. Turnage v. Northern Virginia Steel Corp., 336 F.2d 837 (4th Cir. 1964); Walker v. United States Gypsum Co., 270 F.2d 857 (4th Cir. 1959); Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4th Cir. 1949); Holt v. Bowie, 343 F.Supp. 962 (W.D.Va.1972); Anderson v. Thorington Constr. Co., 201 Va. 266, 110 S.E.2d 396 (1959); Sykes v. Stone & Webster

Engineering Corp., 186 Va. 116, 41 S.E. 2d 469 (1947).

In the present case the owner of the project is the City of Roanoke which is not a party to the suit. In order for § 65.1–29 to be the controlling statute, the City of Roanoke would have had to have been supervising the construction of the Civic Center as part of its daily business; and the defendant would then have had to have sued the City of Roanoke.

Nevertheless, although the defendant may not be relying upon the appropriate section to support its motion, the issue raised is one of jurisdiction. Therefore if some section does exist under the Act which would prevent this court from assuming jurisdiction over the case, then the court may on its own recognize the section.

An examination of the Workmen's Compensation Act discloses the existence of such a section. § 65.1–30 concerns the liability of a contractor under the Act to the workmen of subcontractors. This section reads as follows:

"When any person (in this [section] . . . referred to as 'contractor') contracts to perform or execute any work for another person, which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section . . . referred to as 'subcontractor') for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him."

While these sections place the liability under the Act on different people, they do have the same purpose and effect, and are in reality almost identical in operation. The Virginia Supreme Court discussed both sections and their effect in Sykes v. Stone & Webster Engineer-

ing Corp., 186 Va. 116, 41 S.E.2d 469 (1947). The court stated:

"It is to be noted that the present section 20(a) [now §§ 65.1–29, –30, –31] contains four paragraphs. The first covers a case where the 'owner' undertakes to perform work which is part of his trade, business or occupation and contracts with a 'subcontractor' to do all or part of it. In that case the owner is liable to pay compensation to any workman employed in the work (by any subcontractor) just as if the workman had been immediately employed by the owner."

"The second paragraph covers the case where a 'contractor' contracts to perform work for another person (e. g. the owner), which work is *not* part of the trade, business or occupation of such other person (owner), and contracts with a 'subcontractor' to do all or part of it, then the contractor (but not the owner) shall be liable to pay compensation to any workman employed in the work (by any subcontractor) just as if the workman had been immediately employed by the contractor."

"And so on as to owner, or principal contractor, and subcontractors, in descending order, in the manner provided by the last two paragraphs."

"The section makes the owner liable if the workman, no matter how far down the line, is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation. But if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor is liable to the workman, but not the owner. As between the owner and such contractor, the latter is an independent contractor, and the last paragraph of section 12 [now § 65.1–40], . . ., declares that such workman shall not be taken to be the employe of such owner. And such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade,

business or occupation of the contractor; but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not a part of the trade, business or occupation of the original contractor."

"It clearly appears to be the purpose of section 20(a) to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a). At that point paragraph 5 of section 12 intervenes and the employe's right of action at common law is preserved." Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469, 471 (1947).

Thus, if the subcontractor was performing work which the general contractor was required to perform, then the general contractor would be liable under the Act to the workmen of the subcontractor, and the injured workmen would be precluded from suing the general contractor.

The Fourth Circuit made the following observation:

" . . . it is the aim of the Virginia Workmen's Compensation Act, as interpreted by the state's highest court, that the financial risk of accidental personal injuries inherent in any project be borne by and limited to that project to the extent specified therein. Consequently, where a project is undertaken either by an owner as part of his trade, business or occupation or by a general contractor, the responsibility in damages of any party to a workman injured in

the project must be tested with reference to his relationship to the overall project. If the defendant was engaged in work which was part of the undertaking of the owner or general contractor, regardless of his relationship to the injured workman and his immediate employer, the sections previously mentioned operate to place the economic loss upon the project and to limit the workman's recovery to that project and to limit the workman's recovery to that specified in the Act. On the other hand, where the injury was caused by the negligence of one not engaged in the over-all undertaking, a 'stranger to the business,' it is not an accident inherent in the project, the cost of which should ultimately be borne by the project, and the injured workman's rights and remedies outside of the statute are preserved." Turnage v. Northern Virginia Steel Corp., 336 F. 2d 837, 841 (4th Cir. 1964).

In the present case the City of Roanoke was not engaged in the construction business, therefore the defendant had contracted with a person to do work which was not part of the trade, business or occupation of such other person. Under its contract with the City of Roanoke, it was obligated to supervise and direct all work on the project and was "solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the contract."

The defendant also supplied a list of subcontractors who would do specialized work. Without deciding this point, judging from the responsibilities of the subcontractors named, the court believes that they were to perform work of a specialized nature which the general contractor could not and was not equipped to perform. (E. g. precast concrete walls, heating and air conditioning, plumbing, electrical work, ice rink refrigeration, communications installation, and auditorium stage special steel and stage rigging.) Nowhere on the list of subcontractors did the plaintiff's employer's name appear. While not absolutely conclusive, this would tend to indicate that at the time the contract was signed, the defendant intended to perform the work, which the plaintiff's employer did itself.

Using the criteria established in *Sykes* and *Turnage*, it appears that the plaintiff's employer was performing work which the general contractor was required to perform under its contract with the City of Roanoke. The work performed by Shaw was related to the overall project. All the employees of Shaw were, because of the contract between Shaw and the defendant, subject to the control and direction of the owners of the project. Because the owner made the defendant responsible for all construction, the Shaw employees were directly controlled and supervised by the defendant. The work which the plaintiff did on the project was not of such a specialized nature such that the court would feel it was outside the scope of the defendant's trade, business or occupation. The defendant could easily have used its own men to do the work which the plaintiff did. Being able to perform the work itself and requiring no unreasonable specialized knowledge not possessed by a general contractor, the court finds that the plaintiff's employer was performing work which was part of the trade, business, or occupation of the defendant. Because of §§ 65.1–30, –40, the plaintiff's exclusive remedy is under the Workmen's Compensation Act. This court lacks jurisdiction over the suit. The defendant's motion to dismiss is hereby granted, and the case is dismissed.

Each side shall bear their own costs.