587 F.2d 627
 George PETTUS (Claimant), Respondent,
v.
AMERICAN AIRLINES, INC. (Employer) and Commercial Insurance
Company of Newark, New Jersey (Carrier), Petitioners,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 77-2230.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1978.
Decided Sept. 26, 1978.
Rehearing and Rehearing En Banc Denied Jan. 4, 1979.
 
 Joseph P. Dyer, Washington, D. C. (Siciliano, Ellis, Sheridan & Dyer, Washington, D. C., on brief), for appellants.
 Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor and Mark L. Schaffer, Washington, D. C. (James A. Mannino, Ashcraft, Gerel & Koonz, Washington, D. C., on brief), for appellee.
 Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 American Airlines, Inc. and its employees' compensation insurance carrier, Commercial Insurance Company of Newark, New Jersey, appeal a final order of the Benefits Review Board, awarding American employee George Pettus benefits under the Longshoremen's and Harbor Workers' Compensation Act, (Longshoremen's Act), 33 U.S.C. § 901 Et seq. (1972), made applicable to the District of Columbia by the Workmen's Compensation Act, 36 D.C.Code §§ 501-502 (1973). We reverse.
 
 
 2
 While seeking employment in 1969, Pettus was told by a District of Columbia employment agency that American Airlines had job openings. Going there again for an interview with American's personnel, he learned there would be a position available. The next day Pettus and several other men were transported from the agency's office in the District to National Airport in Virginia, for processing by the American personnel department.
 
 
 3
 After obtaining the employment, Pettus was assigned to duties at the Airport in 1969 as a fleet service clerk in the "line cargo group," loading and unloading planes. While so engaged on May 10, 1972 he suffered an injury to his back. He applied for and was allowed workmen's compensation benefits by the Industrial Commission of Virginia, at the rate of $62 per week from May 10 to July 1, 1972 and from July 15, 1972 to May 16, 1973 under the Virginia Workmen's Compensation Act. Va. Code Ann. § 65.1-1 Et seq. (Repl.Vol. 1973). These payments were terminated, as of May 16, 1973, following a decision after hearing by the Commission that the claimant had unjustifiably refused to undergo recommended back surgery. With no appeal taken to the Supreme Court of Virginia, the decision became final. Va. Code Ann. § 65.1-98 (Cum.Supp.1978).
 
 
 4
 On June 28, 1974, Pettus filed a claim for compensation under the District of Columbia Workmen's Compensation Act. Initially, benefits were denied him when an Administrative Law Judge found the claim not to fall within the jurisdictional scope of the Longshoremen's Act. The Benefits Review Board, however, concluded there were sufficient contacts of the claimant with the District to confer jurisdiction there and reversed. Pettus v. American Airlines, Inc., 3 B.R.B.S. 315, B.R.B. No. 75-197 (March 19, 1976). On remand, another Administrative Law Judge awarded the claimant benefits based upon temporary total disability. When the Board affirmed this decision on August 22, 1977, the present appeal was brought.
 
 
 5
 We accept the Board's determination of jurisdiction, but that is not to say we accept its exercise thereof in favor of the claimant. Cardillo v. Liberty Mutual Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). Here, reversal is mandated by the rules of res judicata and the Full Faith and Credit Clause of the Constitution. These principles required the Board to abide by the order of the Virginia Commission refusing Pettus further compensation.
 
 
 6
 Since the parties in Virginia and the District of Columbia are identical, the next question is whether "the right, question or fact," Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355 (1897), put to rest in the Virginia proceeding is the same as that raised under the Longshoremen's Act before the Review Board.[1] This identity of issue will at once become apparent.
 
 
 7
 The State statute, at the time, provided that "the employee shall accept . . . such surgical and hospital service . . . as may be deemed necessary by the attending physician or the Industrial Commission." Moreover, "(t)he refusal of the employee to accept such service . . . shall bar the employee from further compensation . . . unless, in the opinion of the Industrial Commission, the circumstances justified the refusal." (Va. Code Ann. § 65.1-88 (Repl.Vol. 1973). In section 7(d) of the Longshoremen's Act, 33 U.S.C. § 907(d), it is declared that if "the employee unreasonably refuses to submit to medical or surgical treatment, . . . the Secretary may, by order, suspend the payment of further compensation during such time as such refusal continues, . . . unless the circumstances justified the refusal."
 
 
 8
 The common issue is thus whether the employee's refusal was "justified" under the circumstances as expressed in the State law, or "unreasonabl(e)" as the District of Columbia law puts it. Virginia's Commission saw it unjustified. Unappealed this resolution was "conclusive and binding as to all questions of fact." Va. Code Ann. § 65.1-98 (Repl.Vol. 1973).
 
 
 9
 However, the doctrine of res judicata also exacts that the determination has been made by the Virginia Commission after a full and fair adjudication of its legal and evidential factors. United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). A review of the record makes plain that the procedures afforded the appellee in Virginia and the proof adduced before the State agency abundantly met this criterion.
 
 
 10
 Upon employee's refusal to accept surgery, a hearing was held thereon before one of the members of the Commission in Alexandria, Virginia. The claimant was represented by counsel. After receiving evidence, in the form of medical reports and the injured employee's Ore tenus testimony, the Commissioner on October 9, 1973 held the claimant's refusal was not justified.[2] There followed an order terminating compensation as of May 16, 1973. Upon appeal to the full Commission and a review hearing on January 8, 1974 in Richmond, Virginia, the Commissioner's order was upheld and adopted as the Commission's own. Va. Code Ann. 1950, § 65.1-98 (Repl.Vol. 1973). Moreover, at that stage the award assumed the status of a judgment of a court of record of the State. The statute,[3] Va. Code Ann. § 65.1-100 (Repl.Vol. 1973), provided:
 
 
 11
 Any party in interest may file in the circuit . . . court of the county or city in which the injury occurred, . . . an award of the Commission . . . whereupon the court, . . . shall render judgment in accordance therewith and notify the parties. Such judgment shall have the same effect, . . . as though such judgment had been rendered in a suit duly heard and determined by the court.
 
 
 12
 Thus, without question the decision of the Commission operates as an absolute bar to any other action on the same facts in the courts of Virginia.
 
 
 13
 Therefore, under res judicata the Benefits Review Board, when presented with the Virginia judgment, was compelled to give it the same force and effect as it possessed in Virginia.[4]
 
 
 14
 Notwithstanding, the claimant urges that he still had the right to proceed under the District of Columbia law for compensation benefits, with only the obligation to credit thereon any award he procured in Virginia. Precedent of last resort refutes this contention.
 
 
 15
 It begins with Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943). There the Chief Justice exhaustively explored the law asserted upon the privilege and found it without acceptable basis. A second and separate proceeding in another jurisdiction upon the same injury after a prior recovery in another State, he declared for a majority of the Court, was precluded by the Full Faith and Credit Clause.
 
 
 16
 The factual foundation of the case was that an employee, a resident of Louisiana, while engaged in the drilling of oil wells for his employer, Magnolia, in Texas was injured in his work. He obtained an award of compensation in Texas under its workmen's compensation law. Payments were made by Magnolia's insurer in accordance with the award, which became final under the Texas statute. Thereafter, the claimant brought a like proceeding in a State court in Louisiana. His employer excepted on the ground that recovery was barred as res judicata by the Texas award. This defense was overruled and judgment went for the employee for the sum fixed by the Louisiana law, after deducting the Texas payments. On affirmance by the Supreme Court of Louisiana, certiorari brought the case to the United States Supreme Court where it was reversed.
 
 
 17
 As in Virginia, the Texas statute provided that the award would be in lieu of any other recovery for the injury by the employee, the Act stating that employees "shall have no right of action against their employer . . . for damages for personal injuries, . . . but such employees . . . shall look for compensation solely to the (insurer). . . ." Texas Rev.Civ.Stat., Title 130, art. 8306, § 3. Again, or similar to the Virginia law, an award which has become final "is entitled to the same faith and credit as a judgment of a court." 320 U.S. at 435, 64 S.Ct. at 211. Continuing, the Chief Justice said:
 
 
 18
 In the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events. . . .
 
 
 19
 But it does not follow that the employee who has sought and recovered an award of compensation in either state may then have recourse to the laws and courts of the other to recover a second or additional award for the same injury. Where a court must make choice of one of two conflicting statutes of different states and apply it to a cause of action which has not been previously litigated, there can be no plea of res judicata. But when the employee who has recovered compensation for his injury in one state seeks a second recovery in another he may be met by the plea that full faith and credit requires that his demand, which has become res judicata in one state, must be recognized as such in every other. 320 U. S. at 436-37, 64 S.Ct. at 212.
 
 
 20
 Among the dissenters was Justice Black. However, the foremost ground of his difference was that the parties were not the same in the two proceedings that the one in Texas was against the insurer only and the award limited to a release of the insurer, while in Louisiana the employer's liability, as well as the insurer's, was before the Louisiana tribunal. Thus his difference would not run to the proceeding before us.
 
 
 21
 The claimant further presses that Magnolia was overruled in Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). There, decision favored the claimant's contention that he was entitled to proceed in another State, even after he had prevailed earlier in a like proceeding elsewhere. The employee was a bricklayer for McCartin, and was, like his employer, a resident of Illinois. The contract of employment was made in Illinois, but the employee worked in Wisconsin, driving back and forth between his Illinois home and his Wisconsin job. Suffering an injury in Wisconsin, he there filed for compensation with the Industrial Commission of that State on June 7, 1943. Both employer and insurer, objected to jurisdiction of the Wisconsin Commission. On July 20, 1943, the employee applied to the Illinois Commission for adjustment of the claim.
 
 
 22
 The Wisconsin Commission on October 11 wrote the insurance carrier that the employee had been informed that under Wisconsin law he was entitled to proceed also under the Illinois Compensation Act, and thereafter claim compensation under the Wisconsin law, less any amounts paid him under the Illinois Act. In reply the carrier stated that it understood that if payment were made to the employee under the Illinois statute, credit would be given for those payments in the event of a Wisconsin award. So understanding, the insurer paid the employee compensation under the Illinois law.
 
 
 23
 On November 3, 1943, a settlement contract was made between the claimant-employee and his employer but it stated that: "This settlement does not affect any rights that applicant may have under the Workmen's Compensation Act of the State of Wisconsin." Nevertheless, that State's Supreme Court applied Magnolia and refused to allow the Wisconsin proceeding. The United States Supreme Court reversed.
 
 
 24
 In so doing the Court unequivocally disavowed any intendment whatsoever to modify Magnolia. The distinction between the two was made altogether plain. In Magnolia the award "was made explicitly in lieu of any other recovery for injury to the employee, precluding even a recovery under the laws of another state. And since the Texas award had the degree of finality contemplated by the Full Faith and Credit Clause, it was held that Louisiana was constitutionally forbidden from entering a subsequent award under its statute." 320 U.S. at 626-27, 67 S.Ct. at 889 (citation omitted). It concluded that these circumstances did not exist in McCartin, the Illinois award being "different in its nature and effect from the Texas award" in Magnolia. Id. at 627, 67 S.Ct. at 889. More importantly, prosecution of the proceeding in Wisconsin was virtually under stipulations of consent.
 
 
 25
 The United States Court of Appeals for the District of Columbia Circuit had occasion in Gasch v. Britton, 92 U.S.App.D.C. 64, 202 F.2d 356 (1953), to consider the influence of McCartin upon Magnolia. In denying there was any modification of Magnolia by McCartin, Judge Proctor stated:
 
 
 26
 They (appellants) go so far as to insist that McCartin overrules the Magnolia Petroleum Co. decision. We think that is not so. McCartin complements, rather than opposes, (sic) the earlier decision. 92 U.S.App.D.C. at 65, 202 F.2d at 358.
 
 
 27
 Turning to the Virginia statute, we find it as exclusive of a second proceeding as the Chief Justice in Magnolia found the Texas law. Under the statute, he noted an award "is explicitly made by statute in lieu of any other recovery for injury to the employee." 320 U.S. at 435, 64 S.Ct. at 211. Quoting the Act, Infra at 8, § 3, he said that employees subject to it "shall have no right of action against their employer . . . but . . . shall look for compensation Solely to the (insurer)." Id. (accent added). How precisely the Virginia law fits into the Texas mold appears at once upon reading Virginia's Workmen's Compensation law:
 
 
 28
 § 65.1-40. Employee's rights under the Act exclude all others. The rights and remedies herein granted to an employee . . . shall exclude all other rights and remedies of such employee, . . . At common law or otherwise, . . . . (Va. Code Ann. § 65.1-40 (Repl. Vol. 1973). (Accent added.)
 
 
 29
 In verification of our construction of this section, the Virginia Law Review[5] observes: "Under the Workmen's Compensation Act, any collateral action the employee might have against his employer is barred unless the employee expressly waives coverage of the Act's provisions." A footnote thereto adds: "Employees may waive coverage of the Act . . . but if they do not, their right to compensation excludes any other claims they may have against the employer. . . . "
 
 
 30
 The order of the Benefits Review Board awarding compensation to George Pettus will be vacated for the foregoing reasons.
 
 
 31
 VACATED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 32
 I must respectfully dissent from the majority opinion because I think it misconstrues the application of Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943) and Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), and because it ignores the principle virtually axiomatic in this area of the law that workmen's compensation laws are to be construed liberally in furtherance of their remedial purpose.
 
 I. FULL FAITH AND CREDIT
 
 33
 The lynchpin of the Supreme Court's holding in Magnolia was the Court's finding that the Texas workmen's compensation statute at issue was intended to be exclusive of all other remedies, including remedies afforded by the workmen's compensation laws of other states. The Court based its conclusion on an express statutory provision and on Texas' judicial interpretation of the statute:
 
 
 34
 (U)nder this statute a compensation award may not be had in Texas if the employee has claimed and received compensation for his injury under the laws of another state.
 
 
 35
 Magnolia Petroleum Co. v. Hunt, 320 U.S. at 435, 64 S.Ct. at 212 (citations omitted). From this the Court apparently inferred that the converse was also true: that once a remedy was obtained pursuant to the Texas statute, it operated to preclude successive awards pursuant to other states' workmen's compensation laws by application of full faith and credit.
 
 
 36
 Significantly, the Court withheld the question of the full faith and credit or Res judicata effect of a workmen's compensation award made pursuant to a statute Not held to be exclusive.
 
 
 37
 We have no occasion to consider what effect would be required to be given to the Texas award If the Texas courts held that an award of compensation in another state would not bar an award in Texas, for as we have seen, Texas does not allow such a second recovery.
 
 
 38
 Id. at 443, 64 S.Ct. at 215 (emphasis added). This question was answered four years later in the Court's unanimous opinion in McCartin, holding that an award pursuant to the Illinois workmen's compensation statute was Not a bar to a subsequent award in Wisconsin. The Court first noted that an award under the Illinois statute operated to bar any right of action under Illinois common law or under the Illinois Personal Injuries Act. Industrial Commission of Wisconsin v. McCartin, 330 U.S. at 627, 67 S.Ct. 886.
 
 
 39
 To that extent, the (Illinois) Act provides an exclusive remedy.
 
 
 40
 But there is nothing in the statute or in the decisions thereunder to indicate that it is completely exclusive, that it is designed to preclude any recovery by proceedings brought in another state for injuries received there in the course of an Illinois employment. And in light of the rule that workmen's compensation laws are to be liberally construed in furtherance of the purpose for which they were enacted, we should not readily interpret such a statute so as to cut off an employee's right to sue under other legislation passed for his benefit. Only some unmistakable language by a state legislature or judiciary would warrant our accepting such a construction.
 
 
 41
 Id. at 627-28, 67 S.Ct. at 889 (emphasis added and citations omitted).
 
 
 42
 As the majority correctly notes, in McCartin there was a settlement between the parties which operated as a consent to the subsequent award in Wisconsin. Thus, the Supreme Court did not rest its decision solely upon its construction of the Illinois statute. Id. at 628, 67 S.Ct. 1545. But the importance of the statutory construction was re-emphasized when the Court formulated its holding in McCartin, and appears to be the principal ground of distinction from Magnolia.
 
 
 43
 But when the reservation (the agreement) in this award is read against the background of the Illinois Workmen's Compensation Act, it becomes clear that The reservation spells out what we believe to be implicit in that Act namely, that an Illinois workmen's compensation award of the type here involved does not foreclose an additional award under the laws of another state.
 
 
 44
 Id. at 630, 67 S.Ct. at 890 (emphasis added).
 
 
 45
 McCartin did not overrule Magnolia. However, most commentators agree that when state compensation laws are evaluated in light of the admonition in McCartin for "unmistakable language" indicating that such laws are exclusive of any rights an employee may have under other states' compensation laws successive awards should be sanctioned in almost every jurisdiction. See 4 A. Larson, The Law of Workmen's Compensation §§ 85.10-.40 (1976). Most courts confronted with this issue have so interpreted the compensation statutes. Larson, Supra at § 85.40. This reasoning is in accord with the accepted notion that such laws should be construed liberally in favor of employees, and with sister states' interests in seeing that such employees do not become their public charges.
 
 
 46
 Turning to the Virginia statute at issue, Code of Va. § 65.1-40 (1973 Replacement Volume), I cannot agree with the majority's conclusion that it is exclusive of any rights an employee may have under the workmen's compensation laws of another state. Certainly it is exclusive of any right of action against the employer under the common law of Virginia, E. g., Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469, 471 (1947), even if the compensation award was rendered in a different state. Home Idem. Co. v. Poladian, 270 F.2d 156 (4th Cir. 1959). Presumably it would also be exclusive of any other Virginia statutory remedies, as was the Illinois statute construed in McCartin. But I cannot find a single case in which the Virginia courts have addressed the issue of whether the statute operates to bar awards under the compensation laws of other states; and the majority cites no law or legislative pronouncements to this effect.[1] Indeed, decisional law emphasizes that the remedy under the statute is intended to be exclusive only as to an employee's right to sue his employer for damages. Fauver v. Bell, 192 Va. 518, 526, 65 S.E.2d 575, 580 (1951). Therefore, the majority ignores the mandate of the McCartin court, the great weight of authority, and the principles of workmen's compensation law to read total exclusivity into the silent Virginia statute.
 
 II. RES JUDICATA AND COLLATERAL ESTOPPEL
 
 47
 Assuming that a remedy under the Virginia statute is not exclusive of one under the laws of the District of Columbia, is Pettus' claim otherwise barred by operation of either Res judicata or collateral estoppel? I think not.
 
 
 48
 The doctrine of Res judicata bars relitigation of issues already decided by a court of competent jurisdiction in a lawsuit between the same parties, or litigation of issues which could have been raised and decided in the previous lawsuit.[2] See 1B Moore's Federal Practice P 0.405 (1974). Applying these principles in the context of workmen's compensation awards, it is clear that if the remedy under one state's law is exclusive of any other state's statutory remedies, the doctrine would apply where a subsequent award is sought in a second state. In such a case there is an initial choice of law made in the original proceeding, and that choice is accorded Res judicata finality. See Magnolia Petroleum Co. v. Hunt, 320 U.S. at 437, 64 S.Ct. at 212. However, if the remedy under one state's law is not exclusive, there is no choice of law made. The administrative tribunal in State A determines Only whether the claim falls under the workmen's compensation law of State A; it does not, and could not, determine whether the claim might also be compensable under the workmen's compensation laws of State B. Thus in a subsequent proceeding in State B, this issue is one not previously litigated and one which could not have been litigated. No Res judicata effect attaches. See Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs et al., 583 F.2d 1273 at 1278 (4th Cir. 1978). To hold otherwise would undercut the holding in McCartin and render that opinion a nullity.
 
 
 49
 Here, the Virginia statute at issue is not exclusive of an employee's possible rights under the District of Columbia compensation provisions. The Industrial Commission of Virginia did not, and could not, determine what rights if any Pettus had under those provisions. Thus in the proceeding in the District of Columbia the Secretary was free to determine the issue and his consideration was not foreclosed by the doctrine of Res judicata.
 
 
 50
 Although the doctrine of collateral estoppel could apply in the successive award situation, it should not operate as a bar on the facts of this case. The issue is whether the statutory standards governing eligibility for relief in Virginia and the District of Columbia are identical so that it can be fairly said that the question of a claimant's eligibility is an issue of fact which has been finally determined against him.
 
 
 51
 Until its amendment in 1975, Code of Va. § 65.1-88 (1950) provided:
 
 
 52
 The refusal of the employee to accept such (surgical) service when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Industrial Commission, the circumstances justified the refusal.
 
 
 53
 Section 7(d) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 907(d) (Supp. V, 1975), provides:
 
 
 54
 . . . If at any time the employee unreasonably refuses to submit to medical or surgical treatment, or to an examination by a physician selected by the employer, the Secretary may, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.
 
 
 55
 It is clear that the two statutes vary materially. First, the Virginia statute provides only one standard by which a claimant's refusal to submit to surgery is evaluated: whether circumstances justify the refusal. The District of Columbia statute, on the other hand, has a two-part test: whether the refusal is unreasonable And, if so, whether it is justified by the circumstances. Second, the burden of proof is different in the two statutory schemes. Under the Virginia statute, the entire burden is on the claimant to show that his refusal to have surgery is justified. Under the District of Columbia statute, the initial burden is on the Employee to show that refusal to have surgery is unreasonable; only after the Employee carries his burden must the claimant offer proof that the refusal was nevertheless justified. Finally, the operation of the Virginia statute is mandatory: unless the claimant shows that refusal to undergo surgery was justified, it ". . . Shall bar the employee from further compensation. . . ." (Emphasis added). On the other hand, the operation of the District of Columbia statute is permissive: ". . . the Secretary May . . .suspend the payment of further compensation. . . ." (Emphasis added).
 
 
 56
 In view of the variance in the burden of proof and the allocation of that burden in the Virginia and District of Columbia proceedings, the finding of the Virginia Industrial Commission that Pettus did not Prove that his refusal Was justified cannot estop litigation in the District of Columbia on the issue of whether that refusal was unreasonable and unjustified. See Young & Co. v. Shea, 397 F.2d 185 (5th Cir.), Rehearing denied, 404 F.2d 1059 (5th Cir. 1968), Cert. denied, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969).
 
 
 57
 Since I believe that the District of Columbia was not precluded by full faith and credit, Res judicata or collateral estoppel from entertaining Pettus' claim, I would affirm the decision of the United States Department of Labor, Benefits Review Board.
 
 ORDER
 
 58
 Upon a request for a poll of the court on the suggestions that this case be reheard en banc, less than a majority of the judges in regular active service having voted in favor of rehearing en banc,
 
 
 59
 It is accordingly ADJUDGED and ORDERED that rehearing en banc shall be, and the same hereby is, denied.
 
 
 60
 The panel has considered the petitions for rehearing and is of opinion they are without merit.
 
 
 61
 It is accordingly ADJUDGED and ORDERED that the petitions for rehearing shall be, and they hereby are, denied.
 
 
 62
 It is further ORDERED that the addendum to the opinion attached to this order shall be, and the same hereby is, filed and made a part of the opinion in this case.
 
 
 63
 ALBERT V. BRYAN, Senior Circuit Judge, concurs.
 
 
 64
 K.K. HALL, Circuit Judge, dissents. He would affirm the award.
 
 SUPPLEMENTAL OPINION
 PER CURIAM:
 
 65
 Petitions filed by George Pettus and the Director, Office of Workers' Compensation, for rehearing of the decision herein of September 26, 1978, have been denied, but we deem it advisable to correct a mistaken impression of the petitioners. They charge that this opinion is in conflict with ours of September 21, 1978, in No. 77-1886, Newport News Shipbuilding and Dry Dock Company v. Director, OWCP.
 
 
 66
 The conflict is said to be manifest in the denial to Pettus of the right to seek compensation under the District of Columbia Workmen's Compensation Act (Longshoreman's and Harbor Workers' Compensation Act) after the Virginia Commission had dismissed his claim for refusal to comply with its order allowing compensation, but that in Newport News Shipbuilding the right to proceed under the District of Columbia law was granted employee, Jenkins, after his claim had been rejected by the Virginia Commission.
 
 
 67
 Actually, there is no inconsistency between the two adjudications. Pettus had originally been awarded compensation by the Virginia Commission with no doubt that his injury was work-related. Thus, there was no necessity for him to seek the remedy afforded by the D. C. Act in order to be compensated.
 
 
 68
 On the other hand, Jenkins had no claim whatsoever under the Virginia law, because there was no relationship Proved between his injury and work. This was a finding of a jurisdictional fact, negating the jurisdiction of the Virginia Commission. It was not a finding on the merits of the claim. At all events, no relief was obtainable by him under the State law.
 
 
 69
 However, the absence initially of Proof of this essential factor was not a bar under the Federal law, because it gave him a presumption of work-relatedness to start with, an assistance unavailable to him in the Virginia proceeding. Furthermore, since his burden of proof was thus lighter under the Federal statute, the result of the litigation before the Virginia Commission had no collateral effect and Jenkins could embrace the Federal forum without first proffering proof of the work relationship. In so doing he was making out a different case, one not entertainable in Virginia.
 
 
 70
 Thus the judgments of Pettus and Jenkins rested on separate bases. Jenkins could not recover under the State law but Pettus could. Obviously, these conclusions were not mutually contradictory.
 
 
 
 [1]
 The fact that the decision-maker in the initial adjudication was an administrative agency is of no consequence. For "(r)es judicata effect may attach to determinations of administrative agencies in appropriate circumstances. United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). See Industrial Comm'n of Wisconsin v. McCartin, 330 U.S. 662, 67 S.Ct. 886, 91 L.Ed. 1140 (1947); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943)." Mitchell v. National Broadcasting Co., 553 F.2d 265, 268-69 (2nd Cir. 1977)
 
 
 [2]
 The attending orthopaedic surgeon had recommended surgery to correct the condition. When the employee refused, a period of conservative treatment was attempted, but it was finally concluded that surgery was necessary to restore the claimant to an employable status
 
 
 [3]
 Recodified, the citation of this section appears in the 1978 Cum.Supp. to Va. Code Ann. as § 65.1-100.1
 
 
 [4]
 The Constitution of the United States, art. IV, § 1, fathered the Act of Congress, now § 1738 of Title 28, United States Code:
 § 1738. State and Territorial statutes and judicial proceedings; full faith and credit
 The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 [5]
 Workmen's Compensation, Eighteenth Annual Survey of Developments in Virginia Law: 1972-1973, 59 Va.L.Rev. 1632 (1973)
 
 
 [1]
 The majority cites 59 Va.L.R. 1632 (1973) as support for its holding; this article collects and discusses only cases standing for the accepted proposition that an award under the Virginia statute operates as a bar to any other rights at common law against the employer
 
 
 [2]
 For purposes of this discussion I will assume that there was identity of parties in the Virginia and District of Columbia proceedings