**ELKHORN–HAZARD COAL LAND
CORPORATION, Appellant,**

v.

**James TAYLOR et al., Appellees.**

Supreme Court of Kentucky.

May 28, 1976.

Armer H. Mahan, Davis & Mahan, Louisville, for appellant.

Grayson Johnson, Hindman, James D. Asher, Polly, Craft & Asher, Whitesburg, William F. Gadd, Dept. of Labor, Ed W. Hancock, Atty. Gen., Thomas A. Ainley, Asst. Atty. Gen., William L. Huffman, Dept. of Labor, Frankfort, for appellees.

PER CURIAM.

This appeal requires an interpretation of KRS 342.610(2), which provides:

"A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. *A person who contracts with another (a) to have work performed consisting of the removal, excavation or drilling of soil, rock or mineral, or the cutting or removal of timber from land, or (b) to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of such person, shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. This subsection shall not apply to the owner or lessee of land principally used for agriculture.*" (Emphasis added)

The appellant, Elkhorn-Hazard Coal Land Corporation, hereinafter referred to as Elkhorn-Hazard, entered into a written contract with Melvin Banks, doing business as M & A Coal Company, whereby Elkhorn-Hazard leased to M & A Coal Company for a period of three years the right to mine all of the Hazard No. 4 coal in a parcel of land in Letcher County, Kentucky.

M & A Coal Company was required to pay a minimum royalty of $100 per month plus a tonnage royalty of 45 cents per ton ascertained according to ramp or railroad weight. Lessor's engineers were to calcu-

late periodically the amount of tonnage removed and in the event the weight reported by lessee did not check within five percent of the calculations of the engineers payment of the tonnage royalty was to be made according to the calculations of the engineers.

M & A Coal Company was prohibited from marketing coal from the mine under more than one name, agreed to have the purchaser deduct the tonnage royalty from the purchase price of the coal and to make the check therefor payable directly to the Elkhorn-Hazard; and M & A further agreed to (1) begin work upon the lease immediately and to operate the mine in such a manner as to ultimately recover the greatest possible amount of coal, and (2) to weigh all coal removed from leased premises at a ramp or tipple operated by Carr Creek Fuel Company or the Sugar Branch Coal Company.

The president and principal stockholder of the lessor, Elkhorn-Hazard Coal Land Corporation, was also the president and principal stockholder of both the Carr Creek Fuel Company and the Sugar Branch Coal Company.

In the event of the failure of the Lessee to have the coal weighed at the facilities of the designated companies the tonnage royalty was increased to ten percent of the sales price of the coal but in no event less than 55 cents per ton.

The appellee James Taylor was an employee of the M & A Coal Company. He became completely disabled by reason of pneumoconiosis. His last employment was with M & A Coal Company but his disability could not be attributed solely to that employment.

M & A Coal Company did not carry workmen's compensation insurance and Taylor filed his claim for compensation naming the M & A Coal Company, the Uninsured Employers Fund and the Special Fund as defendants.

The Workmen's Compensation Board sustained a motion to dismiss the Uninsured Employers Fund and to make Elkhorn-Hazard a party defendant on the theory that Elkhorn-Hazard was an insured employer who was "deemed" to be a contractor pursuant to KRS 342.610(2) because the lease (1) was a contract with another to have work performed consisting of the removal of minerals and (2) the lease constituted a contract to have work performed of a kind which is a regular or recurrent part of the work of the trade or business of the lessor.

The Board awarded Taylor compensation for total and permanent disability to be apportioned between the Special Fund and Elkhorn-Hazard. Elkhorn-Hazard petitioned for review and the circuit court affirmed the award. Elkhorn-Hazard prosecutes this appeal.

The group of workers comprised in the common law definition of "employees" does not always coincide with the group of workers who, as a matter of economic fact, need the protection of workmen's compensation insurance. Larson's Workmen's Compensation Law, Volume 1A, § 49.21.

■ When an owner has work performed by an independent contractor the employees of the independent contractor are not employees of the owner and ordinarily the owner has no workmen's compensation liability for job-related disability. *Bright v. Reynolds Metals Company*, Ky., 490 S.E.2d 474 (1973). Likewise the employees of a subcontractor are not the employees of the contractor.

To discourage owners and contractors from hiring financially irresponsible contractors and subcontractors the Workmen's Compensation statutes in a number of states, in one way or another, have extended coverage to workers who are not actually employees of the person ultimately made liable for the payment of compensation awards.

Forty-one states, including Kentucky, have enacted some version of a *contractor-under* statute which places liability upon a contractor for payment of workmen's compensation awards to the employees of a

subcontractor if the subcontractor fails to provide coverage under the act. KRS 342.-610(2); Larson's Workmen's Compensation Law, Volume 1A, § 49.11.

Several states have also adopted provisions by which a person is *deemed* to be a contractor if he contracts to have work done of a kind which is a regular part of his trade, business, occupation or profession. KRS 342.610(2) contains such a provision and adds an additional situation in which a contractor-subcontractor relationship is deemed to exist, namely when there is a contract to have work performed consisting of the removal, excavation, or drilling of soil, rock or mineral or the cutting or removal of timber from land.

The provisions of KRS 342.610(2) setting forth conditions in which a person may be deemed a contractor are limited in application to persons who contract with another to have work performed for them by the other person. The question in issue in this case is whether the lease executed by Elkhorn-Hazard and M & A Coal Company can be said to constitute a contract to have work performed by M & A Coal Company for Elkhorn-Hazard.

In some cases where a business is conducted through the use of leased property as a marketing outlet the lessor is held liable to the employees of the lessee for workmen's compensation benefits. *Continental Oil Company v. Sirhall,* 122 Colo. 332, 222 P.2d 612 (1950). An employee of the Sid Katz, Inc., a shoe company, which leased space in a department store sued the department store in tort and the department store successfully defended upon the grounds that the employee of the lessee shoe company was the statutory employee of the department store whose recovery was limited to workmen's compensation. *Schmolke v. Krauss Co.,* La.App., 217 So.2d 789 (1969).

In *Shell Oil Company v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972) the Supreme Court of Virginia held that the employees of a gasoline service station operated under lease from Shell Oil Company were not statutory employees of the Shell Oil Company.

In this case however there is no lease of premises to be used as a marketing outlet and aside from a provision in its articles of incorporation listing mining as one of its many business purposes there is no evidence in the record upon which it could be concluded reasonably that Elkhorn-Hazard has actually engaged in the business of mining.

There is no basis in the record for a conclusion that Elkhorn-Hazard was conducting a mining business through the use of a lease or that it was conducting any work through the use of a lease which was a regular part of its business operations and which normally would have been accomplished through the use of its own employees.

■ It does not appear to us that the lease can be construed as a contract to have work done for Elkhorn-Hazard. The work performed by M & A Coal Company was done for itself in a proprietary capacity. M & A Coal Company was mining the coal for its own use and not for Elkhorn-Hazard. Under the lease in question M & A Coal Company alone benefited from increases in the market price of coal or from efficiencies in operation. Likewise M & A alone bore the loss of decreased prices or inefficient operation.

If this were a sale of the coal in place to M & A Coal Company we do not think it could be contended successfully that the seller has an obligation to provide workmen's compensation coverage for the employees of the purchaser engaged in the mining of the coal. Although this lease cannot technically be construed to be a sale of the coal deposit in place the ownership of that part of the coal deposit actually separated from the surface and mined was transferred from the lessor to the lessee. This fact strengthens the conclusion that M & A Coal Company was not performing work for Elkhorn-Hazard under the lease.

There is no showing in the record that the lease arrangement resulted in a payment to M & A Coal Company of a price

less than the true market value or price of the coal. Consequently we do not regard it as a matter of controlling importance that the lease required the coal to be weighed at the tipple of corporations controlled by the president of Elkhorn-Hazard.

The judgment is reversed insofar as it allows recovery against Elkhorn-Hazard with direction that a new judgment be entered dismissing the claim against Elkhorn-Hazard.

All concur.