NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0257n.06
Filed: April 4, 2005

No. 04-5145

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHARLES T. GILES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| FORD MOTOR COMPANY, | ) | District of Kentucky |
| | ) | |
| Defendant-Appellee. | ) | |

Before:     **BOGGS, Chief Judge; MARTIN, Circuit Judge; and WEBER, District Judge.**[*]

**PER CURIAM.** Plaintiff-Appellant Charles Giles appeals from the district court's order granting summary judgment in favor of Defendant-Appellee Ford Motor Company ("Ford"). Giles brought suit against Ford for negligence after he was injured while making a delivery to Ford's Kentucky Truck Plant ("KTP"). The district court held that Ford was entitled to "up the ladder" immunity under the Kentucky Worker's Compensation Act ("KWCA"), and that Ford was therefore entitled to summary judgment as a matter of law on Giles's tort claim. For the reasons set forth below, we affirm the judgment of the district court.

**I**

---

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

Giles was a truck driver for Pegasus Transportation, Inc. ("Pegasus"), an Indiana trucking company used by Ford to transport automobile components and parts between several of Ford's manufacturing plants, including the KTP, and to pick up parts from third-party suppliers. Although the KTP was not Giles's only delivery destination, he delivered parts there approximately ten to twelve times per week. On May 14, 2002, Giles delivered parts to the KTP from Dura Automotive Systems, Inc., a parts supplier in Milan, Tennessee. While he was waiting in the driver's waiting area at the KTP, he was struck by a product being pushed by a forklift truck operated by a Ford employee. He suffered a torn rotator cuff. Giles filed a worker's compensation claim against Pegasus, and received worker's compensation benefits, in addition to reimbursement for his medical bills and a portion of his lost wages. Giles also filed suit against Ford, seeking damages for the same injury for which he had received worker's compensation benefits. Ford moved for summary judgment, on the ground that Giles's claim was barred by the "up the ladder" immunity provision of the KWCA, which provides that any employer, or contractor of any employer, that secures worker's compensation benefits for an injured worker shall not be liable for any other damages otherwise recoverable under the common law. The district court granted summary judgment in favor of Ford without explanation.

## II

We review a district court's order granting summary judgment *de novo*, and its findings of fact for clear error. *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002).

The KWCA provides that:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents,

2

dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

Ky. Rev. Stat. Ann. § 342.690 (Michie 1997). Ford claims that it is immune from tort liability under § 342.690 because it is a contractor,[1] as defined by subsection (2) of § 342.610, and because its subcontractor – Pegasus – secured worker's compensation benefits for Giles. Subsection (2)(b) of § 342.610 defines a contractor as:

A person who contracts with another:
(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person.

"The purpose of the provision of KRS 342.610 that a contractor is liable for compensation benefits to an employee [of] a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986). By the same token, if a defendant qualifies as a contractor, "it has no liability in tort to an injured employee of a subcontractor" once worker's compensation benefits are secured. *Ibid.* In essence, the Act treats the employees of a subcontractor as *de jure* employees of the contractor for the purposes of guaranteeing worker's compensation benefits. The reverse of this coin is that contractors also benefit from the immunity from tort liability granted to employers.

---

[1] Although the word "contractor" today typically refers to those in the building and construction trades who agree to perform work for others, the Kentucky statute apparently uses the term in its more general (and, according to the Oxford English Dictionary, obsolete) sense of "one who enters into a contract or agreement." 3 Oxford English Dictionary 837 (2d ed. 1989).

3

If Ford contracted with Pegasus to have work performed that was a regular or recurrent part of Ford's business, then Giles's suit for common law damages was barred by the KWCA. It is undisputed that Ford contracted with Pegasus to have work of some sort performed; the question before us is whether the work Pegasus actually performed for Ford – the transportation of auto parts, primarily, but not exclusively, from one Ford plant to another – was a regular or recurrent part of Ford's business.

Although relatively few cases have interpreted the immunity provision of the KWCA, those cases have consistently and uniformly held that the delivery of parts or goods from one company site to another is a regular and recurrent part of a company's business. *See Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d 715, 718 (W.D. Ky. 2000) (delivery of goods from central warehouse to retail stores is a regular and essential aspect of business); *Wright v. Dolgencorp, Inc.*, No. 2003-CA-001715-MR, 2004 Ky. App. LEXIS 280, at *1, *3 (Ky. Ct. App. Sept. 24, 2004) (delivery of goods from central warehouse to retail stores is a regular and essential aspect of business); *Tom Ballard Co. v. Blevins*, 614 S.W.2d 247, 249 (Ky. Ct. App. 1980) (transporting coal is a regular or recurrent part of the business of coal mining). The delivery of goods and components need not be the central focus of a company's trade or business for it to be a regular or recurrent *part* of that trade or business. Indeed, an activity must be entirely tangential to a company's main business to fall outside the terms of KWCA, such as the installation of plumbing in the factory within which a company manufactures goods. *Compare Cain v. Gen. Elec. Co.*, No. 2002-CA-001843-MR 2003, 2003 Ky. App. LEXIS 325, at *29 (Ky. Ct. App. Dec. 19, 2003) (unpublished) (holding that installing plumbing in GE appliance factory did not constitute regular and recurrent aspect of appliance business) *with Granus v. N. Am. Philips Lighting Corp.*, 821 F.2d 1253, 1257 (6th Cir.

4

1987) (holding that replacement of firebricks in furnace used to melt glass was regular and recurrent part of business of glass works). The delivery of component parts from one plant to another cannot be described as a tangential part of the truck manufacturing business.

It is true that the delivery of goods to Ford might not constitute a regular and recurrent part of Ford's business if those goods were purchased from another company and delivered by that company to Ford simply as an incident of that sale. *See Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003). *Davis* involved the sale of parts to Ford by the Budd Company. The parts were loaded by Budd onto Ford-supplied racks at the Budd plant, and then delivered to Ford by third-party carriers. Ricky Davis, a Budd employee, was injured while loading parts on to the shipping racks. The *Davis* court held that the sale of goods by Budd to Ford did not constitute a regular and recurrent part of Ford's trade or business, absent the provision of some additional service that Ford would otherwise have had to do itself, such as inspecting, unloading, or handling the goods. *See id.* at 790. Simply preparing the goods for delivery to Ford did not constitute an additional service sufficient for Budd to "cross the line from a supplier to a subcontractor." *Ibid.* Giles argues that *Davis* stands for the proposition that delivering truck parts is not a regular or recurrent part of the recipient's trade or business for KWCA purposes unless the delivery company performs additional services such as those described by the *Davis* court – services that Giles did not in fact perform. This argument fails. The *Davis* court simply held that preparing goods for delivery does not turn a supplier of goods into a subcontractor. At most, *Davis* might lead us to question whether a seller of goods who also delivers those goods to the buyer could be considered a subcontractor under the KWCA. *Davis* did not suggest, however, that *all* service providers, not just sellers of goods, must perform additional tasks over and above the services they were hired to

5

perform. Delivery of parts from one Ford plant to another is – in itself – a regular and recurrent aspect of Ford's manufacturing business, and Pegasus was therefore a contractor as defined by § 342.610. The fact that Giles happened on this occasion to be delivering parts picked up at a third-party supplier does not alter the fundamental nature of Ford's relationship with Pegasus, his employer.

## III

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of Ford.