RENDERED:  AUGUST 13, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1524-MR

ANGELA R. HUFF, INDIVIDUALLY;
AND AS EXECUTRIX OF THE
ESTATE OF DAVID W. HUFF                                          APPELLANTS


|       | APPEAL FROM MERCER CIRCUIT COURT |
| :---- | :------------------------------: |
| v.    | HONORABLE DARREN W. PECKLER, JUDGE |
|       | ACTION NO. 17-CI-00194           |


SOUTHERN STATES SOMERSET
COOPERATIVE, INCORPORATED                                         APPELLEE


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

COMBS, JUDGE:  Appellant, Angela Huff, individually and as Executrix of the

Estate of David W. Huff, appeals from an order of the Mercer Circuit Court which

held that the Appellee, Southern States Somerset Cooperative, Incorporated, was

entitled to up-the-ladder immunity under the Kentucky Workers' Compensation

Act, KRS[1] Chapter 342.  After our review, we affirm in part, reverse in part, and remand.

David W. Huff was employed by Southern States Cooperative, Inc. On August 4, 2016, Mr. Huff was killed on his employer's premises at its Harrodsburg location while operating a Willmar Wrangler 4500 front-end loader which overturned.[2]

On August 2, 2017, Angela Huff, individually and as Executrix of the Estate of David Huff (Huff), filed a complaint in Mercer Circuit Court asserting claims of product liability, breach of warranty, failure to warn, and negligence against the Defendants, AGCO Corporation and Cargill, Incorporated, which Huff alleged had designed, marketed, manufactured, sold, and distributed the front-end loader.

On August 25, 2017, Defendants AGCO and Cargill filed a joint notice removing the case to the United States District Court for the Eastern District of Kentucky.  On September 1, 2017, Defendant Cargill filed a motion to dismiss for failure to state a claim.  Cargill attached a report from the Kentucky Labor

---

[1] Kentucky Revised Statutes.

[2] Mr. Huff's employer, Southern States Cooperative, Inc., is not a party to this case.  The Appellee, Southern States **Somerset** Cooperative, Incorporated, is a separate entity that was the original purchaser of the subject front-end loader.

Cabinet Occupational Safety and Health Program (Kentucky OSH),[3] which had conducted an inspection due to the fatality.

The Kentucky OSH report reflects that the accident occurred on August 4, 2016, at 1:00 p.m. Mr. Huff was operating a Willmar Wrangler 4500 articulated front-end loader and was filling an order of fertilizer at his employer's Harrodsburg store when the loader tipped over, pinning Mr. Huff underneath and causing his death. According to the report, the Appellee, Southern States Somerset Cooperative, Incorporated (Somerset), was the original purchaser of the front-end loader and had sold it to Mr. Huff's employer in 2002.[4]

Huff then filed an amended complaint in federal District Court joining Somerset as a defendant. Huff identified Somerset as a Virginia business entity based upon a report from the Kentucky Secretary of State. Huff alleged that Somerset was negligent in maintaining the Willmar Wrangler 4500 used by David Huff. In its answer and Rule 7.1(a) corporate disclosure, Somerset stated that it is incorporated in Virginia with its principal place of business in Somerset, Kentucky.

---

[3] A copy of the Kentucky OSH report is attached as Exhibit "C" to Defendant Cargill's memorandum in support of its May 21, 2018, motion to dismiss Plaintiff's amended complaint filed in Mercer Circuit Court (Record on Appeal (ROA) at 85).

[4] At page 2, footnote 1 of its Appellee's Brief, Somerset clarifies that it purchased the loader as a new piece of equipment in 2000 and that it owned it until 2007 – not 2002 as erroneously reported.

Somerset filed a motion to dismiss, arguing that the claims against it are barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act. Huff filed a motion for remand based upon lack of subject matter jurisdiction. By opinion and order dated May 8, 2018, the federal District Court explained as follows:

> Huff's intent in filing the amended complaint was not to defeat diversity jurisdiction. . . . Huff did not seek remand until . . . Somerset filed its answer and corporate disclosure statement stating that its principal place of business was in Kentucky.

*Huff v. AGCO Corp.*, No. 5:17-CV-354-KKC, 2018 WL 2113195, at *4 (E.D. Ky. May 8, 2018) (ROA at 239-40).

The District Court concluded that joinder was appropriate and granted Huff's motion to remand based on newly discovered lack of diversity. It also denied all remaining motions as moot and remanded the case to the Mercer Circuit Court.

On May 29, 2018, Defendant Somerset filed a motion to dismiss or, in the alternative, for summary judgment in the Mercer Circuit Court on the ground that the claims that Huff asserted against it are barred by the exclusive remedy provisions of the Kentucky Workers' Compensation Act (KWCA), KRS Chapter 342. In its supporting memorandum, Somerset explained that it is a member-owned local cooperative. Somerset argued that it "is a 'contractor,' who

-4-

contracted with Southern States Cooperative (a 'subcontractor') for the provision of management and accounting services; accordingly, it is entitled to up the ladder immunity" under KRS 342.690. Somerset submitted the affidavit of Anne Clingenpeel, Vice President of Retail Operations of Mr. Huff's employer, Southern States Cooperative, Inc., which provides in relevant part:

> 3. Southern States Cooperative, Inc. owns and operates the Southern States retail store and land located in Harrodsburg, Kentucky, including the premises on which the August 4, 2016 incident occurred. . . . Harrodsburg is not a separate legal entity; it is one of the 13 locations Southern States Cooperative operates in the state of Kentucky. Southern States Cooperative, Inc. secured workers' compensation coverage for its own employees, and a true and accurate copy of the declarations pages reflecting said coverage is attached as Exhibit A.

> 4. At the time of the subject incident, August 4, 2016, David Huff was employed by Southern States Cooperative, Incorporated. . . . At the time of the accident, David Huff worked . . . as a General Manager – Retail, acting as general manager for six retail stores located in Harrodsburg, Campbellsville, Danville, Stanford, Liberty and Frankfort.

> 5. Southern States Cooperative, Inc. has relationships with sixty member-owned local cooperatives ("Local Cooperatives"), including [Somerset], in which Southern States Cooperative, Inc. provides services and supplies to the Local Cooperatives.

> 6. At the time of the subject incident, August 4, 2016, the relationship between Southern States Cooperative, Inc. and [Somerset] was governed by the management agreement entered into on May 10, 1948, a true and accurate copy of which is attached as Exhibit C. . . .

7. Pursuant to Exhibit C, Southern States Cooperative, Inc. obtained workers['] compensation insurance for [Somerset] through Southern States Insurance Exchange, as it did for each Local Cooperative. A true and accurate copy of the declarations pages applicable to the workers['] compensation coverage in place for [Somerset] on August 4, 2016 is attached as Exhibit D.

8. Pursuant to its management agreements with the Local Cooperatives (including [Somerset]), Southern States Cooperative, Inc., managed the business affairs of the Local Cooperatives and provided services and supplies to the Local Cooperatives, including management supervision, training, assistance with local meetings and membership relations, publicity, engineering, marketing, the payments of dividends, and the procurement of supplies and commodities. Southern States Cooperative, Inc. received a fee for these services from the Local Cooperatives. Southern States Cooperative, Inc. also procured insurance coverage, including workers' compensation coverage, for and on behalf of the Local Cooperatives. Moreover, all capital for each of the Local Cooperatives is obtained from Southern States Cooperatives, Inc. on the basis of an open account or negotiable notes.[5]

(ROA at 152-54) (underline original).

On June 19, 2018, Huff filed a response to Somerset's motion and argued that the motion should be treated as one for summary judgment and that genuine issues of fact existed which precluded summary judgment as a matter of law. Huff argued that Somerset failed to provide any information or proof as to the

---

[5] The management agreement, Exhibit "C," was filed under seal.

-6-

nature of its business, or any proof that Mr. Huff performed **any work** for

Somerset.  Additionally, she noted that the accident did not occur on Somerset's

premises.

On July 23, 2018, the trial court nevertheless entered an order

granting Somerset's motion for summary judgment, stating as follows:

> At the time of the accident, the decedent Mr. Huff was an
> employee of Southern States Cooperative and served as
> general manager for six retail locations of Southern
> States.  The accident occurred on the premises of the
> Harrodsburg retail location, which is owned and operated
> by Southern States Cooperative and was one of the stores
> Huff managed.
>
> In addition to the thirteen store locations operated
> by Southern States Cooperative, certain store locations are
> operated by member-owned local cooperatives like
> [Somerset].  For stores operated by local cooperatives,
> Southern States Cooperative has management contracts in
> place . . . .
>
> In its motion to dismiss, [Somerset] argues that it is
> entitled to workers['] compensation immunity pursuant to
> KRS 342.690(1).  . . .
>
> . . . General Electric Co. v. Cain, 236 SW3d 579 (Ky.
> 2007), . . . holds that, in order for a defendant to quali[f]y
> for workers' compensation immunity via the up-the-
> ladder defense, same must provide 1) proof that it secured
> workers['] compensation coverage; and 2) proof that it is
> a contractor as defined in KRS 342.610(2).  The Court in
> Cain held that immunity would apply if the work
> performed was "customary, usual, normal, or performed
> repeatedly and which the business or a similar business
> would perform or be expected to perform."

. . .

> In the instant action, this [c]ourt finds more than sufficient evidence that there was workers['] compensation coverage. In addition to the policy provided by the defendants, the record indicates that the decedent's spouse received a proposed settlement of workers['] compensation benefits through Southern States Insurance Exchange.[6] With regard to the proof that [Somerset] was a contractor of Southern States Cooperative, the management agreement and the affidavit of A. Clingenpeel clearly shows that [Somerset] meets the definition of "contractor" under Kentucky law.

On July 25, 2018, the Defendants AGCO and Cargill filed a notice again removing the case to federal court.

On August 1, 2018, Huff filed a notice of appeal to this Court from the Mercer Circuit Court's order of July 23, 2018. On March 21, 2019, Huff filed a motion to dismiss that appeal.[7] By an order entered on May 14, 2019, in *Huff v.*

---

[6] Exhibit 4 to Somerset's memorandum in support of its motion to dismiss/for summary judgment is a copy of an unexecuted Workers' Claims Agreement as to Compensation/ Form 110-F which reflects the Defendant/Employer is Southern States Cooperative, the Insurer is Southern States Insurance Exchange, and that the injury/fatality occurred on August 4, 2016, at 1027 North College Street, Harrodsburg, Kentucky, which is listed as mailing address for the Defendant/Employer. The description of the occurrence is "Decedent was operating a front-end loader when it overturned pinning Decedent underneath it." (ROA at 175).

[7] In her motion to dismiss the earlier appeal to this Court, Huff explains that she filed it out of an abundance of caution after Defendants Cargill and AGCO again filed a notice removing the case to federal court. Thus, Huff had no avenue of relief because she was not a party to the federal court action. On August 13, 2018, this Court entered a show cause order as to why the appeal should not be dismissed as premature. The matter was subsequently passed to the merits panel. Then on March 13, 2019, the United States District Court entered an order again remanding the case to Mercer Circuit Court, which regained jurisdiction over the matter in its entirety. (ROA at 429-31).

*Southern States Somerset Cooperative, Incorporated*, No. 2018-CA-001185, this Court granted Huff's motion. (ROA at 411). We dismissed the appeal as interlocutory because the order granting summary judgment did not contain the requisite finality language.

On July 12, 2019, Huff filed a notice of service of discovery requests to the defendants in Mercer Circuit Court, including interrogatories, requests for production, and a request for admissions to Somerset.

On July 15, 2019, Somerset filed a motion pursuant to CR[8] 54.02 requesting that the circuit court make final and appealable its July 23, 2018, order dismissing Huff's claims against it.

On August 7, 2019, Somerset filed a motion for a protective order pursuant to CR 26.03 regarding Huff's discovery requests. Somerset argued that although the order dismissing the claims against it was not yet final and appealable, the discovery requests were not proper because Somerset was no longer a party to whom interrogatories, requests for production, and requests for admission could be directed.

On August 9, 2019, Huff filed a response objecting to Somerset's motion to make the July 23, 2018, order final and appealable. On August 12, 2019, Somerset filed a reply.

---

[8] Kentucky Rules of Civil Procedure.

On September 9, 2019, the circuit court entered an order granting

Somerset's motions as follows in relevant part:

> [T]he [c]ourt having reviewed the written record, heard arguments of counsel, and being otherwise sufficiently advised;
> IT IS HEREBY ORDERED AND ADJUDGED as follows:
> 1. The July 23, 2018 [o]rder dismissing the claims against [Somerset] is hereby final and appealable, as there is no just reason for delay;
> 2. [Somerset's] Motion for Protective Order is hereby SUSTAINED.

On October 8, 2019, Huff filed a notice of appeal to this Court from

the circuit court's orders of July 23, 2018, and September 9, 2019.

Huff first argues that the circuit court erred in certifying the order of

July 23, 2018, as final and appealable. CR 54.02(1) provides as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more **but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final.** In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.)

As Somerset notes, this is not a case where a judgment was made final as a matter of routine. The issue was addressed in Somerset's motion, in Huff's response, and in Somerset's reply. The circuit court's July 23, 2018, order disposed of all claims Huff asserted against Somerset. The circuit court determined that there was no just reason for delay. The September 9, 2019, order contained the requisite recitals and made the July 23, 2018, order final and appealable pursuant to CR 54.02. We find no abuse of discretion. *Christie v. First Am. Bank*, 908 S.W.2d 679, 681 (Ky. App. 1995) ("[W]e see no reason to reverse such a certification where the trial court has made a 'determination that there is no just reason for delay.' CR 54.02. The trial court has broad discretion in such matters."). Thus, we reject Huff's contention that the circuit court erred in making the order of July 23, 2018, final and appealable. We affirm with respect to this issue.

Huff next argues that reversal and remand are warranted on the merits.[9] She contends that although Somerset nominally filed its motion to dismiss

---

[9] As Somerset notes at page 7 of its Appellee's Brief, Huff relies upon deposition testimony which is not properly in the record on appeal. Somerset explains that the corporate representative's deposition was taken by the remaining Defendant AGCO in October 2019, after Somerset's dismissal. We agree, and therefore, we have not considered any reference to this deposition testimony in Huff's Brief.

pursuant to CR 12.02, the motion should instead be treated as one for summary

judgment. We agree.

> Because the trial court considered matters outside the pleadings, however, we shall review its decision as though it were a summary judgment. CR 12.03; *Old Mason's Home of Kentucky, Inc. v. Mitchell*, [892 S.W.2d 304 (Ky. App. 1995)]. Because summary judgments involve no fact finding, this Court reviews them *de novo,* in the sense that we owe no deference to the conclusions of the trial court. As did the trial court, we ask whether material facts are in dispute and whether the party moving for judgment is clearly entitled thereto as a matter of law. Under this state's rules of practice, summary judgments are to be granted cautiously; they are appropriate only when it appears impossible for the non-movant to prove facts establishing a right to relief or release, as the case may be. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, [807 S.W.2d 476 (Ky. 1991)].

*Blevins v. Moran*, 12 S.W.3d 698, 700-01 (Ky. App. 2000).

In the case before us, the circuit court granted Somerset's motion to

dismiss after determining that Mr. Huff's employer had secured the payment of

workers' compensation benefits – a fact which is not in dispute – and that

Somerset has met the definition of "contractor" under Kentucky law. However, we

are persuaded that the analysis and reasoning of the court misconstrued the law at

this juncture.

At the time of his death, Mr. Huff was performing work for his

employer, Southern States Cooperative, Inc., on his employer's premises at its

Harrodsburg location. In fact, nothing in Ms. Clingenpeel's affidavit or the 1948

management agreement upon which the circuit court relied suggests that Mr. Huff **ever performed** any work for Somerset anywhere – much less on Somerset's premises.

We find the reasoning in *McMillen v. Ford Motor Company*, No. 3:07-CV-309-S, 2009 WL 5169871, at *1 (W.D. Ky. Dec. 20, 2009), applicable and instructive. The facts are as follows:

> Ford Motor Company operates a facility called the Kentucky Truck Plant (KTP). For the past decade, it has been party to a "construction commodity management" (CCM) contract with Abel Construction Company. Under this arrangement, Abel provides construction and maintenance work at the KTP on a non-bid basis for projects worth less than $1 million. Pursuant to this agreement, Abel has designated Comstock as an "alliant partner"–one of two electrical subcontractors hired to perform work at the KTP under the CCM contract. Comstock and Abel each maintain a permanent construction trailer on KTP premises. Comstock employed McMillen as an electrician; at the relevant times his job title was Superintendent. He maintained an office in the Comstock trailer at the KTP and did virtually all of his work for Comstock at the Ford site.

*Id*. at *1.

McMillen was on Ford's KTP premises reviewing a new project. After meeting with Abel Construction's vice-president to discuss the project, McMillen stayed to take notes to prepare a price proposal. When McMillen was finished, a co-worker offered him a ride out of the plant on a motorized cart. McMillen was injured when he was a struck on the head by a high-speed roll-up

door.  McMillen sued Ford for negligence in maintaining the door and its safety

features.  He had already received Kentucky workers' compensation benefits from

the workers' compensation carrier for his employer, Comstock.  The federal

District Court discussed the applicable Kentucky law with respect to Ford in some

detail:

> The exclusiveness provision, KRS 342.690(1), provides:  "If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . ." Because McMillen has undisputedly received workers' compensation benefits through Comstock's insurance policy, this statute would bar him from recovery in tort if Ford is considered his "employer."

> As to this question, KRS 342.690(1) goes on to say that "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact[ ] secured the payment of compensation." In turn, KRS 342.610(2) defines a contractor as a "person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person."

> The courts have read these sections together as forming the basis for the "up the ladder" defense:  "an entity 'up the ladder' from the injured employee and who meets all the qualifications of a 'contractor' under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690." *Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003) (*citing Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992)).  But a contractor may only assert this

defense if it was potentially liable under the workers' compensation scheme; without such potential liability, there is no sense in extending "up the ladder" protection. *See* KRS 342.690(1); KRS 342.610(2). The question, then, is whether McMillen qualified as a statutory employee of Ford at the time of his injury.

*Id.* at *4.

The court explained that McMillen was employed by Comstock as an electrician and superintendent. Comstock was contracted by Abel, which had been hired by Ford under a management contract to provide certain services on a non-bid basis. McMillen spent more than 99% of his time with Comstock at Ford's KTP and had an office in a trailer on Ford's premises. As an electrician for Comstock, McMillen worked almost exclusively on Ford projects.

> However, at the time of the accident, it appears that McMillen had been working for Comstock itself, and not for Ford. Before getting into Reed's golf cart and driving out the door, he had been evaluating a proposed worksite in preparation for writing up a bid. Before Comstock undertook any work on the project, it was required to submit the bid to Abel, which then used it to craft its own proposal to Ford. Ford then had the option to accept or reject the quoted terms.
>
> . . .
>
> While McMillen acted for workers' compensation purposes as a Ford employee during much of his time with Comstock, he was not doing so at the time of his injury. The critical issue is which of these roles matters to this litigation. Is it more important that he was frequently a Ford "employee," or that he was not acting as one at the time in question?

-15-

. . . Ford did contract with Comstock to have work performed, but McMillen's injury occurred while he was performing work for Comstock itself, and not (at least, not directly) for Ford. The language of KRS 342.610 does not specify how to address this situation.

*Id*. at \*5. The District Court explained that it took some guidance from *Davis*,

*supra*,[10] and concluded that:

It matters, that is, exactly **what an employee is doing at the relevant time.** What is important is whether the plaintiff can rightly be considered an "employee" of the defendant at the time he is injured. If so, the plaintiff can recover workers' compensation benefits without proof of fault, and the defendant is protected from suit. If not, the defendant is vulnerable in tort.

. . .

[W]e think Kentucky law limits the up-the-ladder defense to injuries sustained during **work performed in the service of the entity seeking to assert the defense.** No-fault workers' compensation benefits are available only for a "*work-related* traumatic event or series of traumatic events." KRS 342.[0]011(1) (emphasis added). Courts have interpreted "work-related" narrowly to mean

---

[10] Davis worked for the Budd Company, which pressed roof panels for Ford trucks in accordance with Ford's specification. Ford supplied the shipping racks to transport the completed panels. Davis was injured while closing a shipping rack which had jammed. After receiving workers' compensation benefits from Budd, Davis filed a negligence action against Ford. Ford moved for summary judgment, asserting that it was an up-the-ladder contractor under KRS 342.610. The Court concluded that it was not, noting that the injury happened at Budd, not at Ford, in connection with the manufacture of goods, not the rendition of services. "Naturally, different scenarios could produce different results." *Davis*, 244 F. Supp. 2d at 790.

-16-

"arising out of and in the course of employment."
*Seventh St. Rd. Tobacco Warehouse v. Stillwell*, 550
S.W.2d 469, 470 (Ky. 1976). "The rule is that
compensation is not recoverable for injuries sustained by
reason of a cause independent of and unconnected with
the work of employment because such injuries are not
brought about by conduct growing out of and incident to
the employment." *Chesser v. Louisville Country Club,
Inc.*, 313 S.W.2d 410, 411 (Ky. 1958) (*citing Hayes
Freight Lines, Inc., v. Burns*, 290 S.W.2d 836 (Ky.
1956)). McMillen's injuries were not related (except
very tenuously through the bidding process) to any work
done for Ford, and Ford consequently was not
responsible for his statutory benefits. Instead, he
recovered those benefits from Comstock, the company
that actually employed him at the time of his injury. But
because the plaintiff's injuries do not qualify for no-fault
benefits from Ford, Ford also does not qualify to assert
that it is immune from suit.

*Id*. at *6-7. (Emphases added.)

For the same reasons, we conclude that in the case before us, the

Mercer Circuit Court erred in granting Somerset's motion for summary judgment

on grounds of immunity under KRS Chapter 342. Mr. Huff was not performing

any work for Somerset at the time of his death; rather, he was working for his

"own and only" employer Southern States Cooperative, Inc., on his employer's

premises in Harrodsburg. Thus, we conclude that Somerset does not qualify to

assert that it is immune from suit, and we reverse the circuit court's order granting

summary judgment.

Huff also seeks reversal of the circuit court's September 9, 2019, protective order. Somerset responds that the issue was not preserved because Huff did not raise it in her prehearing statement. We agree. The issue is not properly before us. *Sallee v. Sallee*, 142 S.W.3d 697, 698 (Ky. App. 2004) ("Since that issue was not raised either in the prehearing statement or by timely motion seeking permission to submit the issue for 'good cause shown,' CR 76.03(8), this matter is not properly before this court for review.").

Accordingly, we AFFIRM the decision of the trial court in its order of September 9, 2019, electing to certify the order of July 23, 2018, as final and appealable. However, we REVERSE the order of the Mercer Circuit Court granting summary judgment in favor of Somerset and REMAND for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

William D. Nefzger
Louisville, Kentucky

BRIEF FOR APPELLEE:

Kevin W. Weaver
Ernest H. Jones, II
Jamie Wilhite Dittert
Lexington, Kentucky